**Affirmed and Memorandum Opinion filed May 27, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00111-CV

---

### JEFF  FISHER, Appellant

### V.

### FIRST CHAPEL DEVELOPMENT LLC, Appellee

---

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2018-52489**

---

## M E M O R A N D U M   O P I N I O N

Jeff Fisher brings this interlocutory appeal from the trial court's order denying his special appearance. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7); Tex. R. Civ. P. 120a. Appellee First Chapel Development LLC sued Fisher for fraudulent inducement, common law fraud, constructive fraud, negligent misrepresentation, and breach of contract. First Chapel also alleged that Fisher is a Texas resident. In his special appearance, Fisher contended that he is a Hong Kong resident who lacks sufficient contacts with Texas to support personal jurisdiction

over him. Concluding that the trial court properly denied Fisher's special appearance, we affirm.

## *Background*

In its petition, First Chapel alleged that it entered into a transaction with 1776 American Properties VI LLC, through direct contact with Texas resident Fisher, to purchase a piece of property in Houston, Texas. First Chapel received a general warranty deed signed by Fisher, as the managing member of 1776, and warranting title to the property. Relying on the representations in the deed, First Chapel asserts that it secured a construction loan, built a home on the property, and secured a contract for sale of the property. At that point, First Chapel contends it discovered that the deed Fisher signed did not convey clear title to the property, thus causing loss of the contract for sale of the property, foreclosure on the construction loan, and possible loss of the property itself.

First Chapel also alleged that Fisher operated 1776 as his alter ego, controlling all decisions and operations for 1776 and using the corporate form to shield himself from personal liability for those decisions and actions. For those reasons, First Chapel urged that the separate identities of Fisher and 1776 should be disregarded. Based on the representations in the deed, First Chapel raised claims against both Fisher and 1776 for fraudulent inducement, common law fraud, constructive fraud, and negligent misrepresentation. First Chapel also asserted a claim for breach of contract against both defendants.

In his special appearance and attached affidavit, Fisher asserted that he is a Hong Kong resident who lacks significant contacts with Texas. He stated that he has not lived in Texas since 1994 and has lived in Hong Kong since 1997. He attached copies of several tax returns and a Hong Kong identification card as additional evidence. Fisher acknowledged that he visits his parents a couple of

2

times a year in Texas and that he maintains a Texas driver's license so that he can drive on those visits. Fisher also stated that he was formerly a manager or investor in companies that do business in Texas, but he personally does not own any real or personal property, have any bank accounts, register any vehicles, or conduct any business in the state.

In its response to Fisher's special appearance, First Chapel alleged that "numerous entities doing business in Harris County . . . are alter ego's of Fisher." First Chapel also asserted that according to Fisher's pleadings in another lawsuit, he bought over 70 properties for himself, his family, and a private investor through companies Fisher created. First Chapel stated that in an unsworn declaration in the other lawsuit, Fisher represented his address as located in Spring, Texas. Other alleged Texas court filings and appearances are also referenced in First Chapel's response.

At the hearing on the special appearance, Fisher's counsel insisted that Fisher was only acting as an agent for 1776 and not in his individual capacity, Fisher was a full-time resident of Hong Kong and not the United States, and although he travels to the United States occasionally for business or to see his parents, he has not lived in this country since 1994. Counsel also referred to Fisher's affidavit that was on file along with copies of his tax returns and Hong Kong identification card.

First Chapel's counsel offered an exhibit into evidence that included the pleading and declaration Fisher purportedly filed in another court. The pleading represents Fisher to be a Texas resident. The declaration appears to be signed by Fisher but is not notarized and does not state it was made on penalty of perjury. In the purported declaration, Fisher represents his address as being in Spring, Texas. Fisher's counsel objected that the document was not notarized, appeared to be an

3

unofficial copy, and was hearsay. The judge pointed out that the documents appeared to be time-stamped in 2006 by the Harris County District Clerk's Office and admitted the exhibit into evidence. First Chapel's counsel also made a number of additional arguments that are not pertinent to resolution of this appeal.

At the conclusion of the hearing, the trial judge denied Fisher's special appearance, specifically referencing the unsworn declaration representing Fisher's address as being in Spring, Texas. The judge did not enter findings of fact or conclusions of law.

### *Standards of Review*

Whether a court has personal jurisdiction over a defendant is a question of law we review de novo. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). When, as here, the trial court does not enter findings of fact or conclusions of law, we imply all facts necessary to support the trial court's ruling that are supported by the evidence. *Id*. The ruling may be challenged for legal and factual sufficiency. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id*. at 827. Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the conclusion under review. *Id*. In a factual-sufficiency challenge, we consider and weigh all the evidence, both supporting and contradicting the finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We will set aside a finding for factual insufficiency only if it is so contrary to the

overwhelming weight of the evidence as to be clearly wrong and unjust. *Id*. at 407.

## Discussion

Among other jurisdictional allegations, First Chapel asserted that Fisher was a Texas resident. Fisher was required to negate this allegation to be successful in his special appearance. *See Restrepo v. All. Riggers & Constructors, Ltd.*, 441 S.W.3d 453, 454–55 (Tex. App.—El Paso 2014, no pet.); *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *DowElanco v. Benitez*, 4 S.W.3d 866, 870 (Tex. App.—Corpus Christi 1999, no pet.). The crux of this issue comes down to the admissibility and import of two documents within an exhibit admitted during the special appearance hearing: (1) Fisher's purported pleading from another case in which it states, among other things, that he is a Texas resident, and (2) a declaration filed in the same case in which Fisher stated that his address is in Spring, Texas. Fisher contends that these documents are inadmissible because First Chapel failed to establish their authenticity, citing primarily our opinion in *Wilson v. Fleming*, 566 S.W.3d 410, 415 (Tex. App.—Houston [14th Dist.] 2018), *rev'd*, 610 S.W.3d 18 (Tex. 2020). As noted, however, that opinion has been reversed by the Texas Supreme Court, and under the authenticity analysis set forth in the supreme court's *Fleming* opinion, we conclude the trial court properly admitted these documents and they control the disposition of this appeal.

## Admissibility of the Documents

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). We will uphold the trial court's decision as long as it is within the zone of reasonable disagreement. *Diamond Offshore Servs., Ltd. v. Williams*, 542 S.W.3d 539, 545 (Tex. 2018). To authenticate a document, the proponent must "produce

5

evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a); *accord Deluxe Barber Sch., LLC v. Nwakor*, 609 S.W.3d 282, 296 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). By rule, some documents are self-authenticating, such as certified copies of public records or public documents that are sealed and signed. *See* Tex. R. Evid. 902(2), (4). Evidence may also be authenticated in other ways, including by an affidavit or direct testimony from a witness with knowledge that a matter is what it is claimed to be. *See* Tex. R. Evid. 901(b)(1); *Deluxe Barber*, 609 S.W.3d at 296. A complete absence of authentication renders evidence incompetent, even if no timely objection was raised. *See Maree v. Zuniga*, 577 S.W.3d 595, 603 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

In *Fleming*, we held that a judgment and a jury verdict filed in another case were unauthenticated because (1) the copies offered into evidence were uncertified, and thus did not fall within Rule 902's list of self-authenticating documents, and (2) the proponent failed to present any extrinsic evidence of the documents' authenticity, such as an affidavit or testimony by a person with knowledge. 566 S.W.3d at 516-17. In reversing, the supreme court explained that a document itself may contain such markers of authenticity—i.e., that the thing is what it is claimed to be—such that it is authenticated even though it is not listed as "self-authenticating" in Rule 902 and no extrinsic evidence is offered. *Fleming v. Wilson*, 610 S.W.3d 18, 20-21 (Tex. 2020). In support, the supreme court specifically referenced subsection (b)(4) of Rule 901, which "provides that the 'appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances,' may 'satisf[y] the [authentication] requirement,'" and subsection (b)(7), which "recognizes that public records may be authenticated with evidence that they were

6

'filed in a public office as authorized by law' or are 'from the office where items of this kind are kept,' without suggesting that such evidence cannot be found on or within the item itself." *Id*. at 21 (quoting Tex. R. Evid. 901(b)(4), (7)).

In regard to the judgment and jury verdict at issue in *Fleming*, the supreme court noted that although they were uncertified, they bore a diagonal watermark from the district clerk's office and a file stamp showing when they were filed in the clerk's office. *Id*. The court also emphasized that the opposing party in *Fleming* "never suggested that the documents were faked, forged, or altered, but instead complained only that they were not certified copies." *Id*. The court then concluded that: "Considering the documents' 'appearance, contents, substance, [and] other distinctive characteristics,' taken 'together with all the circumstances,' we cannot say that the trial court abused its discretion by accepting the documents as authentic." *Id*. (quoting Tex. R. Evid. 901(b)(4)). The court further held that the trial court also could have concluded that the documents were authenticated under subsection (b)(7) as public documents that "were 'recorded or filed in a public office as authorized by law' or are 'from the office where items of this kind are kept.'" *Id*. (quoting Tex. R. Evid. 901(b)(7)). Finally, the court stated that "the watermark and file stamp from the district clerk's office on the documents qualify as sufficient evidence, so the trial court did not abuse its discretion by finding them authentic." *Id*.

In the present case, Fisher's pleading from the other case contains the same diagonal watermark from the district clerk's office as did the documents at issue in *Fleming*. Fisher's pleading is also filed stamped, showing the date and time of receipt by the clerk's office and the name of the intake clerk. The pleading states that it is Fisher and another defendant's amended answer, amended counterclaim, and application for a temporary restraining order and temporary and permanent

injunctions. The name of an attorney purporting to represent Fisher in the litigation is typed in two signature blocks on the last page of the document.

The document attached to the pleading is entitled "Declaration" and is file-stamped and watermarked in the same way as the pleading. It purports to be a declaration by Fisher regarding matters at issue in the same case as the pleading. What appears to be Fisher's signature appears at the end of the declaration along with the date on which it was signed. Neither Fisher nor his counsel has denied that the pleading was filed on Fisher's behalf or that the declaration was signed by Fisher. Fisher has not and does not suggest that these documents were faked, forged, or altered; he complains only that they were not certified copies. Based on the supreme court's analysis in *Fleming*, we cannot say that the trial court abused its discretion in admitting the pleading and the declaration over Fisher's authenticity objection. *See id*.; *see also Diamond Offshore*, 542 S.W.3d at 545. The trial court could have reasonably concluded that these documents are what they purport to be based on the documents' appearance, contents, substance, and other distinctive characteristics, taken together with all the circumstances, or because they are public documents recorded or filed in a public office as authorized by law and appear to be from the office where items of this kind are kept. *See* Tex. R. Evid. 901(b)(4), (7); *Fleming*, 610 S.W.3d at 21; *Deluxe Barber*, 609 S.W.3d at 296.

### *Fisher's Residence*

We now turn to the trial court's implied holding that it had personal jurisdiction over Fisher as a Texas resident. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *accord Chow v. San Pedro*, No. 14-18-00429-CV, 2019 WL 4021908, at *4 (Tex.

App.—Houston [14th Dist.] Aug. 27, 2019, pet. denied) (mem. op.). Under Texas law, a "domicile" is (1) an actual residence that is (2) intended to be a permanent home. *Willig v. Diaz*, No. 01-15-00073-CV, 2016 WL 2955395, at *3 (Tex. App.—Houston [1st Dist.] May 19, 2016, no pet.) (mem. op.) (citing *Snyder v. Pitts*, 241 S.W.2d 136, 139 (Tex. 1951)).

As discussed, among other allegations in its petition, First Chapel asserted that Fisher was a Texas resident. In his special appearance and affidavit, Fisher insisted that he is a Hong Kong resident, has lived in Hong Kong since 1997, and has not lived in Texas since 1994. Fisher further averred that while he was formerly a manager or investor in companies that do business in Texas, he personally does not own any real or personal property, have any bank accounts, register any vehicles, or conduct any business in the state. Fisher also asserted that he did not personally enter any contract with First Chapel. Fisher also attached copies of his tax returns and Hong Kong identification card.

Statements in Fisher's pleading and declaration in the other lawsuit directly contradict statements that he makes in the affidavit filed in this case. In the pleading, Fisher stated that he is a Texas resident, and in the declaration, he stated his address was in Spring, Texas, as of the summer of 2016. But, in the affidavit, Fisher claimed that he was a "full-time resident of Hong Kong and [had] been continuously domiciled in Hong Kong since 1997." Moreover, the pleading and the declaration reference substantial contemporaneous business transactions in Texas; whereas, in his affidavit, Fisher claimed he "was formerly a manager and/or investor of several limited liability companies which do business in Texas . . . , but I do no personal business in Texas."[1] First Chapel's original petition in the present

---

[1] Among the business dealings the declaration and pleading indicate Fisher conducted in Texas are (1) the creation of a Texas corporation, Independence Construction & Finance Co., to make loans to builders and manage construction projects; (2) creation, ownership, and control of,

9

case was filed in summer 2018 and complains of conduct beginning in September 2016, around the same time that the pleading and declaration were filed in the other case.

When clear and unequivocal, admissions in live pleadings are regarded as judicial admissions in the case in which the pleadings are filed; accordingly, the facts judicially admitted require no proof and preclude the introduction of evidence to the contrary in that case. *Velco Chems., Inc. v. Polimeri Europa Americas, Inc.*, No. 14-03-00395-CV, 2004 WL 1965643, at *3 (Tex. App.—Houston [14th Dist.] Sept. 7, 2004, no pet.) (mem. op.) (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001)). Pleadings in another case that are inconsistent with a party's position in the present litigation are not always conclusive against the party but may be considered evidence that the party can attempt to explain, contradict, or deny. *Rippey v. Chase Home Fin., LLC*, No. 02-13-00190-CV, 2014 WL 982373, at *4 (Tex. App.—Fort Worth Mar. 13, 2014, no pet.) (mem. op.); *BP Auto. LP v. RLJ-McLarty-Landers Auto. Grp.*, No. 06-16-00041-CV, 2017 WL 817185, at *8 (Tex. App.—Texarkana 2, 2017, no pet.) (mem. op.); *Louviere v. Hearst Corp.*, 269 S.W.3d 750, 754–56 (Tex. App.—Beaumont 2008, no pet.); *see also Velco Chems.*, 2004 WL 1965643, at *4–5. Under appropriate circumstances, admissions in pleadings in other lawsuits can become judicial admissions. *See Velco Chems.*, 2004 WL 1965643, at *4; *Daimler-Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 719 (Tex. App.—Austin 2000, pet. dism'd w.o.j.); *DowEnlanco*, 4 S.W.3d at 871. That may occur when it

and employment with, another Texas company, Blaveso, which possesses a Texas real estate license and manages properties and brokers transactions in the state; and (3) requesting the court treat Blavesco's counterclaims in the other lawsuit as direct actions to benefit Fisher as the shareholder of a closely held corporation. Fisher also stated in the pleading that "[i]n 2008 Fisher began his business of buying property through several investment limited liability companies on behalf of himself, his family and private investors." Much of the rest of the pleading discusses the purchase and management of such properties in Texas.

appears: (1) the statement was made during the course of a judicial proceeding; (2) the statement is contrary to an essential fact embraced in the declarant's theory of recovery or defense; (3) the statement is clear and deliberate, and not a mistake; (4) giving conclusive effect to the admission will not be contrary to the public policy on which the rule is based; and (5) the statement is not destructive of the offering party's theory of recovery. *See Velco Chems.*, 2004 WL 1965643, at *4; *Daimler-Benz*, 21 S.W.3d at 719; *DowEnlanco*, 4 S.W.3d at 871.

Here, we need not decide whether Fisher's statements in the other litigation constitute judicial admissions because, regardless of that determination, the statements constitute relevant evidence on which the trial court could have determined Fisher was a Texas resident for jurisdictional purposes. *See BP Auto.*, 2017 WL 817185, at *8 (declining to determine whether admission of partnership status in another lawsuit constituted judicial admission because regardless, it was competent evidence of partnership status); *Restrepo v. All. Riggers & Constructors, Ltd.*, 441 S.W.3d 453, 454–55 (Tex. App.—El Paso 2014, no pet.) (holding evidence was sufficient to establish party was Texas resident where party listed Texas address in pleading and after signature block); *DowEnlanco*, 4 S.W.3d at 871 (holding statements regarding residency in federal lawsuit established residency in Texas lawsuit).

Fisher has not directly addressed the statements in the pleading or the declaration from the other lawsuit. He offers no explanation or denial regarding the statements. He simply presents an affidavit stating alternative facts. The trial court reasonably rejected Fisher's self-serving statements in his affidavit in this case given the contradictory statements made in the pleading and declaration in the other lawsuit. While the trial court may well have considered the tax returns and the identification card in considering the jurisdictional issue, these exhibits do not

11

render the evidence legally or factually insufficient.[2]

The trial court's implied finding that Fisher is a Texas resident is supported by legally and factually sufficient evidence. Accordingly, the trial court properly concluded that it has personal jurisdiction over Fisher, and we overrule Fisher's sole issue.[3]

We affirm the trial court's denial of Fisher's special appearance.


/s/     Frances Bourliot
        Justice


Panel consists of Justices Bourliot, Hassan, and Poissant.

---

[2] Fisher listed a Hong Kong address on the tax returns, which also contradicts the statements he made in the pleading and declaration. The identification card was mostly in Chinese, does not appear to show an address, and there was no evidence regarding what was needed to obtain the card. Although relevant to the issue, these exhibits do not render the evidence legally or factually insufficient.

[3] Our prior opinion in *Chow* is distinguishable on this issue. In *Chow*, we held that evidence the defendant had owned property in Texas and maintained a homestead property tax exemption for that property did not establish the defendant was a Texas resident. 2019 WL 4021908, at *5-7. We reached this conclusion based largely on the defendant's explanation that he had lived on the property several years before and had inadvertently failed to remove the homestead exemption. *Id*. at *6.